BAINES *v.* STATE.

Oct. 12, 1953

No. 38808          38 Adv. S. 1          67 So. 2d 300

*L. Percy Quinn,* Jackson, for appellant.

*John E. Stone,* Assistant Attorney General, Jackson, for appellee.

LOTTERHOS, J.

Appellant was convicted of the unlawful possession of intoxicating liquor. The facts disclosed by the record are summarized as follows:

On the west side of a gravel road, there were three houses, which were operated as "honky-tonks" for Negroes. The one on the south side was known as the Blue Top; the middle place was the Ritz; and the one to the north was the Lone Star. On a certain Saturday night, about ten o'clock, the sheriff, with the assistance of other officers, searched the Lone Star and the Ritz, under warrants issued for that purpose. The Blue Top was dark and not operating. There was a large crowd—25 or 30 people—in each of the other places.

The spaces between the houses were from 30 to 50 feet wide. These houses were surrounded by weeds. At the rear of the Ritz, about 30 feet from the house, there was a small out-house used as a toilet. Anybody who wanted to, used the out-house. A similar out-house was behind the Lone Star. There was a distinct path from the front of each house to the road, and from the Ritz and the Lone Star to the respective out-houses. There was a path around the Ritz out-house to the place where the liquor, hereafter mentioned, was found. The testimony was in some confusion as to other paths at this location.

When the search of the Ritz was made, the warrant was served on appellant, who was present there, behind the counter. Appellant was operating the place, was in charge, and was running it. No liquor was shown to have been found in the house. A search outside the house disclosed nine half pints of whiskey and three half pints of gin, hidden in the weeds immediately behind the out-

house of the Ritz. Appellant disclaimed any knowledge, or ownership, or possession of the liquor, and so testified in her own behalf.

It will be observed that the proof for the State consisted of a showing that appellant operated the Ritz as a "honky-tonk"; that on the night of the search, when numerous patrons were there present, liquor was found hidden behind the out-house; and that there were certain paths on the premises, as referred to above. Appellant denied knowledge, ownership, or possession of the liquor.

██ ██ Appellant requested, but was denied, a peremptory instruction, and the refusal of this instruction is assigned as error. We think that, on this record, the point is well taken.

It is well settled that, ██ ██ when an accused person is to be convicted on circumstantial evidence, the proof of guilt must be such as to exclude every other reasonable hypothesis consistent with innocence. Algheri v. State, 25 Miss. 584; Moore v. State, 188 Miss. 546, 195 So. 695; Murphree v. State, 201 Miss. 34, 28 So. 2d 238. Notwithstanding a natural and strong suspicion that appellant was in fact the owner of the liquor stored in the weeds at the rear of her place of business, we cannot say that its presence there under the circumstances necessarily excludes every reasonable hypothesis consistent with her innocence. The liquor may have been placed there by any one of the numerous people present at the Ritz and at the Lone Star, or by the operator of the Lone Star. The location of the liquor was readily accessible to all of them. This possibility is reinforced by the testimony of appellant, disclaiming any connection with the liquor.

The State relies on Chamblee v. State, Miss., 44 So. 2d 415, and Revette v. State, 209 Miss. 860, 48 So. 2d 511. It is true that in the Chamblee case the Court affirmed a conviction of liquor possession on proof that the liquor was found at the end of a path or paths leading from the defendant's place. In affirming the case, the Court said:

"In view of the fact that the nearest residence was shown to be about three hundred yards away and the paths were well defined from recent and more than casual use, and served as access to no objective other than the cached contraband, this was sufficient to raise an issue of fact for the jury."

But the doctrine of the Chamblee case is clarified by the Revette case. The latter decision also involved a prosecution based on the discovery of intoxicating liquor stored near a path leading from the defendant's place. But, in this instance, the appellant, Revette, was discharged. The Court in discussing the so-called "beaten path doctrine" stated that it "should be confined in its application to a route which terminates at or near the contraband, coupled with a limited or no access to the premises by others, and to other relevant circumstances which might justify a jury in finding possession." It was commented that the factual situation in the Chamblee case was different from that in the case of Revette.

In the case at bar, the path leading to the liquor was that frequently used by patrons of the Ritz in approaching the out-house, except that they did not necessarily use the continuation of the path around the out-house, from front to the rear. However, this extension of the path (only a few feet long) was conveniently at hand for them, and the place where the liquor was found was easily accessible to them.

Our holding in this case is sustained by Foster v. State, Miss., 49 So. 2d 258, and Loftin v. State, Miss., 51 So. 2d 921, which are closely analogous to the present situation. It is also in accord with the doctrine of Sellers v. City of Picayune, 202 Miss. 741, 32 So. 2d 450.

Appellant assigned other errors on this appeal, but, of course, in view of what has been said in this opinion on the point discussed, it is unnecessary for us to consider them.

Reversed and appellant discharged.

*Roberds, P. J.,* and *Lee, Arrington* and *Ethridge, JJ.,* concur.