# IN THE SUPREME COURT OF MISSISSIPPI

# NO. 2022-KA-01089-SCT

*JOE DAVIS EXSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/21/2022 |
| TRIAL JUDGE: | HON. JAMES McCLURE, III |
| TRIAL COURT ATTORNEYS: | BRADLEY STUART PEEPLES |
| | STEVEN PATRICK JUBERA |
| COURT FROM WHICH APPEALED: | YALOBUSHA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY:  W. DANIEL HINCHCLIFF |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  ASHLEY LAUREN SULSER |
| DISTRICT ATTORNEY: | JAMES STEPHEN HALE, JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/14/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KING, P.J., CHAMBERLIN AND ISHEE, JJ.**

**KING, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Joe Exson was convicted of burglary of a dwelling, grand larceny, and first degree arson after the jury was shown a video of a man who looked like him and wore the same hoodie as he had in his possession committing these crimes.  Exson appeals, arguing that the State failed to prove the value element under the larceny statute and that the jury was

improperly instructed as to the value element of the larceny statute. Because Exson's claims are procedurally barred and without merit, this Court affirms his convictions.

## FACTS AND PROCEDURAL HISTORY

¶2. On January 4-5, 2021, Jamie Diltz's house in Oakland, Mississippi was burglarized. The person who burglarized the house, later identified as Joe Exson, took several items over the two days, including a television, several lamps, several clocks, medicine, a mirror, and paintings. Much of the burglary was caught on video via Arlo cameras inside the house that uploaded the videos to cloud storage. For much of the video, Exson was wearing a distinctive grey hoodie with large squares of white on the bottom front. On January 5, Exson set fire to bedding in the bedroom, which was also caught on video. The house consequently completely burned down. Exson was indicted and tried for burglary with the intent to commit larceny, grand larceny, and arson.

¶3. On January 6, 2021, Diltz gave a written statement to the Oakland Police Department and the fire marshal in which he listed the items that the video showed as being stolen from the home. Diltz listed the following items and his estimate of their worth:

TV $250
paintings $300
clocks $600
mirrors $200
tools $200
medicine Oxyco, Depression
pictures $50
the house
Lamp $200

The total of the values of stolen items listed is $1800, which does not account for the medicines to which Diltz assigned no specific value on the form. He also gave law enforcement his Arlo login information so that they could access the video evidence obtained through the cameras in the home, which showed the person who took the items and set the fire, and also captured many or all of the items stolen. At trial, Diltz testified that the total value of the stolen items as viewed on the video was "I'm thinking by everything of the age, maybe two or three thousand dollars." He clarified that the value was "[w]ell over a $1,000." The defense did not cross-examine Diltz on the issue of valuation.

¶4. Deputy Wortham with the Yalobusha County Sheriff's Department was dispatched to pick up Exson in relation to the burglary and arson. Deputy Wortham testified that when he went to pick up Exson, Deputy Wortham observed Exson put on a grey and white hoodie. The hoodie he wore was entered into evidence. Deputy Wortham identified the hoodie as the same hoodie seen in the videos and the still captures therefrom. Deputy West interviewed Exson after Deputy Wortham picked him up, and also identified the hoodie that Exson was wearing in the interview and that was in evidence as the same hoodie seen being worn in the video during the burglary and arson.

¶5. The Yalobusha County fire investigator also testified at trial regarding the cause and source of the fire. Multiple witnesses for the State identified the person in the video as Exson. Exson testified in his own defense, as did a friend of his. Both of their testimony centered on arguing that the person in the video was not Exson.

¶6.     The State proposed a grand larceny instruction that listed the property taken and stated as an element that the jury must find that "[t]he property was/were valued at more than $1,000 but less than $5,000 and owned by Jamie Diltz[.]" Exson did not object to this instruction, and the Court gave it. The jury returned guilty verdicts for all three counts. The court sentenced Exson to twenty-five years for the burglary conviction, to five years of post-release supervision consecutive to the burglary sentence for the grand larceny conviction, and to ten years of post-release supervision for the arson conviction to run concurrent to the larceny sentence and consecutive to the burglary sentence.

¶7.     Exson appeals. The only issues he raises on appeal pertain to the value element of grand larceny.

## ANALYSIS

¶8.     Exson was convicted of grand larceny in violation of Mississippi Code Section 97-17-41(1). That section provides that grand larceny consists of feloniously taking and carrying away "the personal property of another, of the value of One Thousand Dollars ($1,000.00) or more, but less than Five Thousand Dollars ($5,000.00)[.]" Miss. Code Ann. 97-17-41(1) (Rev. 2020).

¶9.     First, Exson argues that the State failed to provide sufficient evidence of the fair market value of the stolen property. He surmises that the approximation of value by Diltz is not sufficient. Exson failed to raise this argument in his post-trial motions,[1] so it is procedurally barred. *Sheffield v. State*, 749 So. 2d 123, 126 (Miss. 1999). Exson also fails

---

[1]Exson also failed to raise the issue in his motion for a directed verdict and failed to cross-examine anyone regarding the value of the items.

4

to cite any authority whatsoever for his argument, thus this Court may decline to address it. *Arrington v. State*, 267 So. 3d 753, 756 (Miss. 2019). In this specific case, we exercise our discretion not to the review the issue. No injustice will occur in this case from our discretion to decline to address the merits—not only is Exson on video committing the crimes, the reversal of his larceny sentence would effectuate no substantial change to the length of his sentence, since his arson sentence is longer and is to run concurrently.

¶10. Second, Exson argues that the jury was not properly instructed on value and thus could not have properly found the element of value. Exson did not object to the jury instructions at trial, thus this issue is procedurally barred, and this Court reviews the issue only for plain error. *Johnson v. State*, 290 So. 3d 1232, 1240 (Miss. 2020). Under plain error review, a conviction is only reversed if there exists an error "that adversely affected the defendant's substantive rights, causing a manifest miscarriage of justice." *Id.* (internal quotation mark omitted) (quoting *Rodgers v. State*, 166 So. 3d 537, 544 (Miss. Ct. App. 2014)).

¶11. Exson cites *Totten v. State* for support of his argument that the jury was not properly instructed, but *Totten* does not address jury instructions; rather, with regard to a sufficiency of the evidence issue, the Court noted that "the jury was correctly instructed that, in order to find Totten guilty, it had to find that the market value of the property at the time of the larceny equaled or exceeded $500." *Totten v. State*, 166 So. 3d 32, 35 (Miss. 2015). The jury instructions in this case did not specifically define "value." However, a jury instruction on grand larceny is not improper when it defines the crime in conformity with the statute.

5

*Jones v. State*, 223 Miss. 812, 79 So. 2d 273 (1955). And the jury instruction properly tracked the larceny statute on the value element. Certainly, the better practice would be to properly define "value" in this statute for the jury. But Exson did not request a definitional instruction, and trial courts are not required to sua sponte give jury instructions or supplement the requested instructions. *Bernard v. State*, 288 So. 3d 301, 312 (Miss. 2019). It is true that the trial court is ultimately responsible for the jury receiving proper instruction, and it is true that a court's failure to instruct the jury on the basic elements that constitute the crime amount to not only error, but plain error. *Harrell v. State*, 134 So. 3d 266, 270-73 (Miss. 2014). But in this case, the jury was instructed on the basic elements of the crime of grand larceny, and definitional instructions are not in the same position as the instructions on the elements. *Bernard*, 288 So. 3d at 312 (finding no error when the defendant failed to request a definitional instruction regarding the definition of the heat of passion element of manslaughter). Thus, under plain error review, this Court finds no reversible error in a jury instruction that tracks the language of the grand larceny statute, but fails to further define or refine the element of value, when the defendant did not object to the instruction nor request a definitional instruction.

## CONCLUSION

¶12. Exson's arguments are procedurally barred and without merit. Consequently, this Court affirms his convictions.

¶13. **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**

6